# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RYAN THOMAS HOCK,<br><br>                Plaintiff,<br><br>v.<br><br>SECRETARTY OF THE WISCONSIN DEPARTMENT OF HEALTH AND HUMAN SERVICES and JOHN/JANE DOES,<br><br>                Defendants. | Case No. 22-CV-668-JPS<br><br>**ORDER** |

### 1.    INTRODUCTION & BACKGROUND

This case has lingered on the Court's docket since June 7, 2022. The Court has struggled since the inception of this case to navigate the claims attempted to be raised and the parties attempted to be sued. The Court noted in its screening of the case that Plaintiff Ryan Thomas Hock ("Plaintiff") appeared to attempt to sue the state-level Department of Health Services, rather than that of the United States. ECF No. 24 at 1 (citing ECF No. 4 at 5). The identity of the John and Jane Does also remained at issue, and the Court ordered Plaintiff to file an amended complaint identifying those individuals. *See generally* ECF No. 11.

On January 6, 2023, Defendant Secretary of the Wisconsin Department of Health Services ("Defendant") moved to clarify which entity Plaintiff intended to sue. ECF No. 23. Defendant noted that Plaintiff had brought similar state-court litigation against the Waukesha County Department of Health and Human Services and suggested that that county-level entity was likely that which Plaintiff intended to sue in the present

action. *Id*. In light of Defendant's motion to clarify, the Court ordered Plaintiff to inform the Court of the identity of the entity against whom he intended to bring suit and the identities of the John/Jane Doe Defendants. ECF No. 24.

2.  **PLAINTIFF'S RECENT SUBMISSIONS**

In response to the Court's order requesting clarification from Plaintiff, ECF No. 24, Plaintiff filed seventeen pages of documents. ECF Nos. 26, 26-1. Unfortunately, his response only served to complicate matters further. Plaintiff writes that his suit is against "ALL violators of rights under color of law not limited to the DHHS." ECF No. 26 at 1. He now asserts that he intends to sue the state-level Department of Health Services, both the Waukesha and Ozaukee County Departments of Health and Human Services, as well as the federal-level Department of Health and Human Services. *Id*. He goes on to write that he is "suing for the Constitutional Republic of The United States of America as written and strictly defined by the Constitution. It's that simple." *Id*.

As to the Court's request for the identities of the John and Jane Does, Plaintiff's filing states that he intended not to "create a hit list" but rather to "get Justice Constitutionally through the Courts." ECF No. 26-1 at 1. He goes on to list dozens of individuals, including many employees of the Waukesha County Department of Health and Human Services, employees of the "Winnebego [sic] Health Institute," Waukesha County law enforcement officers, employees of the Ozaukee County Human Services Department, employees of the Waukesha County Mental Health Center, employees of ProHealth Waukesha Memorial Hospital, various members of his own family, as well as many others for whom no affiliation is listed. *See generally id.* Plaintiff attributes to these individuals acts of varying levels

of intelligibility—forcible injection of medications, enforcement of "ex post facto laws," "execution of a bill of attainder," "silencing witnesses," attempted murder by use of antipsychotics, "assault with chemical weapon," misappropriation of "tax funds," and knowing violation of advanced directive. *See generally id*.

As to his family members, Plaintiff alleges that they had him involuntarily committed and "illegally detained." *Id*. at 10. He writes that a relative named Cheryl Hock "[s]igned an unconstitutional three-party petition for a Bill of Attainder to be executed against" him and threatened him with involuntary mental commitment in retaliation for Plaintiff's refusal to allow his family to "illegally claim [him] as a dependent on taxes." *Id*. at 11.

Plaintiff also attaches to this response several records, including a mental health transport order, *id*. at 13–14, and a conditional transfer form, *id*. at 15. These records confirm that Plaintiff was subject to involuntary commitment pursuant to Wis. Stat. Ch. 51 and was admitted to the Waukesha County Mental Health Center for "non-compliance." *Id*. at 14, 16. Section 51.20 of that Chapter provides for involuntary commitment of individuals for treatment purposes. *See* Wis. Stat. § 51.20. The records submitted by Plaintiff reflect his diagnosis of schizoaffective disorder, bipolar type. ECF No. 26-1 at 16.

The Court received additional unsolicited document submissions from Plaintiff in the following months.[1] On January 23, 2023, Plaintiff filed

---

[1]Courts have held that such behavior may present grounds for sanctions, including dismissal. *See Jackson v. Sec'y, Dep't of Corr.*, No. 14-13445-D, 2015 U.S. App. LEXIS 23025, at *2 (11th Cir. Apr. 14, 2015) (affirming lower court's finding that plaintiff's "practice of flooding the court with voluminous exhibits containing irrelevant material was 'abusive'"); *Am. Inmate Paralegal Assoc. v. Cline,* 859 F.2d

Page 3 of 11
Case 2:22-cv-00668-JPS   Filed 07/28/23   Page 3 of 11   Document 32

nineteen pages worth of documents. ECF No. 27. These filings demonstrate increasing levels of paranoia and discuss matters with no apparent bearing on this case in a stream-of-consciousness fashion. Plaintiff writes that "fake crack cocaine" was left on his table, he suspects by Defendant and "associated unconstitutional prevailing powers," and that he is being "sentenced to homelessness . . . by the extortionist landlords who seem to be slave traffickers." *Id*. at 1. He describes alleged "[v]iolations of FCC regulations against biologically active emf at amplitudes that dampen the central nervous system used widely to induce drug dependencies and homelessness." *Id.* He alleges that he was "lobotomized" and "tortured . . . simply for having success in recovery." *Id*. He also discusses "three black cats" of whom he has apparently taken care, and he requests that they be "reunited with their families" because he is "struggling to give them basic necessities" and is barely "even capable of taking care of [himself] anymore." *Id*. He goes on to discuss these cats and his relationship with them in further detail.

Plaintiff continues to describe random events and thoughts in a stream-of-consciousness manner. Plaintiff writes that on an occasion in which he encountered a probation officer of a roommate, he identified himself as "O'Brian Wilson." *Id*. at 3. He goes on to explain the history and ancestry of his real name, but he explains that he could not "under any circumstances rationally give [his] real name." *Id*. He also implores the reader to "stop fucking drinking fluorosiailic acid and similar toxic retardation causing substances" because they cause "yellow brittle teeth

---

59, 62 (8th Cir. 1988) (voluminous amount of frivolous documents submitted supported dismissal with prejudice as Rule 11 sanction).

and calcifies the pineal gland preventing cerebral spinal fluid from washing out your brain when you sleep." *Id*. at 4. He writes that he is "constantly threatened by the DHHS and associated religious zealots even with horrifying utterly unconstitutional neuronal implants and so called 'drug addiction implants' that are capable of utterly taking control over a human being's entire mind and body." *Id*. at 5.

On March 15, 2023, Plaintiff filed ten pages worth of documents. ECF No. 29. The margins of these pages are filled with illegible handwritten notes. In the typewritten text, Plaintiff makes similar comments about Chapter 51 and bills of attainder. He also references his possession of "weapons of terrorists and tyrants." *Id*. at 3. He describes "standoffs" he has had involving him "calling the police department and begging them to not violate the law and force [him] to kilk [sic] them." *Id*.

On April 10, 2023, Plaintiff filed twenty-five pages worth of documents. He therein discusses the "price of insulin," the issue of the legality and morality of abortion, a proposed business in which "harvested cells are induced to replicate in vitro," a proposal for Donald Trump to "Make America Greater than it's Ever Been," the Earth's carrying capacity, the possibility of intelligent life outside of Earth, and the difficulty of properly diagnosing Lyme disease. *Id*. at 1–6, 12. He also describes Defendant's "usual policies" as "Mafia style threat tactics." *Id.* at 7.

Plaintiff also includes snippets of what appear to be email or text exchanges between him and some sort of legal advocate. *Id*. The legal advocate, whose name Plaintiff redacted from the filing, advised Plaintiff that they "filed an appeal of the medications order that Judge Lazar made in July 2022." *Id*. "However," the advocate wrote, "since filing the appeal, the County has dismissed your case along with the medications order.

Thus, you are presently not under any court orders [so] . . . the appeal is moot." *Id*. "You are free as you have wanted to be" and are "not being ordered to take any medications," the advocate explained. *Id.* at 7–8.

3.  **ANALYSIS**

The Court has myriad concerns regarding the continued maintenance of this case. The scope of Plaintiff's case is entirely unclear. His submissions reference various issues of policy, many of which are entirely theoretical and inapplicable to him personally. Plaintiff does not have standing to sue over issues that have not actually affected him personally. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). Plaintiff's submissions also continue to discuss individuals and events against whom and relating to which the Court has already concluded Plaintiff may not proceed in this action—for example, Plaintiff continues to reference his landlord. *See* ECF No. 4 at 6. His response, intended to clarify the identities of the John and Jane Does, only muddies the waters by listing numerous individuals without any apparent relation to Plaintiff's claims. And unfortunately, Plaintiff's submissions and allegations are, at least in part, clearly the product of delusions.

In reviewing the record as a whole, it is clear to the Court that the overall aim of Plaintiff's action is to attack the validity and propriety of the mental commitment proceedings to which he was subject, as well as the validity and constitutionality of Chapter 51 proceedings as a general matter. His submissions indicate that he is no longer in custody and is, regrettably, homeless, so he does not ask this Court to order his release from custody. But to the extent that Plaintiff wants this Court to, effectively, invalidate the civil commitment order and mental health proceedings to which he was subject, the Court cannot do so.

Title 42, United States Code, Section 1983 "cannot be used to wage a collateral attack on a judicial or administrative adjudication that authorizes ongoing custody . . . ." *Christian v. Timmermann*, 120 F. App'x 632, 633 (7th Cir. 2004). "*Heck* [*v. Humphrey*, 512 U.S. 477 (1994)] requires a civilly committed person to invalidate his civil commitment before pursuing a § 1983 damages claim that implies that his commitment is invalid." *Henderson v. Liberty Healthcare*, No. 14-3057-SEM, 2014 U.S. Dist. LEXIS 42999, at *5 (C.D. Ill. Mar. 31, 2014) (citing *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140 (9th Cir. 2005) and *Hubbs v. County of San Bernardino*, 538 F. Supp. 2d 1254, 1264 (C.D. Cal. 2008)); *Von Flowers v. Leean*, No. 99-2999, 2000 U.S. App. LEXIS 9617, at *6–7 (7th Cir. May 3, 2000) ("[Plaintiff] is not entitled to sue for damages for his allegedly unconstitutional confinement until he shows that the order of commitment has already been invalidated.") (citing *Clayton-EL v. Fisher*, 96 F.3d 236, 242 (7th Cir. 1996)); *Flowers v. Thorton*, No. 01-C-0629-C, 2001 U.S. Dist. LEXIS 25031, at *11 (W.D. Wis. Dec. 31, 2001) ("Because petitioner's claim that he has been misdiagnosed clearly implicates the validity of his confinement, he cannot proceed under § 1983 until he shows that his order of confinement has already been invalidated or has been called into question by a federal court's issuance of a writ of habeas corpus . . . .") (citing *Heck*, 512 U.S. at 486–87).

Plaintiff's filings indicate that the county-level commitment case and medication order against him have been dismissed, but the grounds of the dismissal are unclear. The Court cannot merely assume that the case's dismissal equates to its invalidation. Plaintiff has not provided any of the documentation associated with that case. *See Von Flowers*, 2000 U.S. App. LEXIS 9617, at *7 ("Because [Plaintiff's] petition cannot be resolved without inquiring into the validity of his confinement, the district court properly

dismissed the suit.") (citing *Copus v. City of Edgerton*, 96 F.3d 1038, 1039 (7th Cir. 1996)). "When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice." *Copus*, 96 F.3d at 1039 (citing *Heck*, 512 U.S. 477).

Additionally at issue is the fact that Plaintiff already sought an injunction against the Waukesha County Department of Health and Human Services in state court and was unsuccessful.[2] An injunction hearing was held in that case in June 2022, at which time Plaintiff was represented by a guardian ad litem attorney. *Id.* Plaintiff's request for an injunction was denied and the case was dismissed. *Id.* That adjudication may implicate claim and/or issue preclusion.

A district court may dismiss a suit on grounds of res judicata if the plaintiff's earlier suit raised identical claims against the same party or parties and reached a final judgment on the merits. *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). Res judicata precludes parties from relitigating issues that were or could have been raised in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The Court infers from Plaintiff's own submissions that his state-level action against Waukesha County Department of Health and Human Services related to Plaintiff's involuntary commitment and medication order. But again, without access to the filings of the case and the basis for the dismissal, it is not clear whether the dismissal was on the merits.

---

[2] *Ryan Thomas Hock v. Department of Health and Human Services (DHHS),* Case No. 2022CV000789 (Waukesha Cnty. Cir. Ct. 2022), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CV000789&countyNo=67&index=0&mode=details (last visited July 26, 2023).

Perhaps most compelling, however, is application of the *Rooker-Feldman* doctrine, which "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983)). This doctrine "prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citing *Exxon-Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The claims Plaintiff attempts to raise here are inextricably intertwined with the state courts' determinations on Plaintiff's competence, the propriety of his involuntary commitment, the status of his mental health, his non-compliance with pharmaceutical treatment, and other related issues, such that the Court lacks jurisdiction to hear such claims.[3] Whether a claim is inextricably intertwined with a state court judgment depends upon "whether the district court is essentially being called upon to review the state court decision." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (citing *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004)). If the court determines that "a claim is inextricably intertwined with a state court judgment—that is, that the former indirectly seeks to set aside the latter—then we must determine whether the plaintiff had a reasonable

---

[3]To the extent that this Court's screening order, ECF No. 4, suggested otherwise, such suggestion appears to have failed to take into account application of the *Rooker-Feldman* doctrine; the doctrine's application has been made wholly clear through Plaintiff's subsequent filings.

opportunity to raise the issue in state court proceedings . . . . If so, the claim is barred." *Id*. (citing *Taylor*, 374 F.3d at 533)).

Such is the case here. Plaintiff takes issue with his involuntary commitment pursuant to Chapter 51 and the involuntary medication order to which he was subject. He essentially asks this Court to find that he was involuntarily committed and medicated against his will in error and through some sort of evil conspiracy. This the Court will not do. *See Ali Nadzhafaliyev v. Dyslin*, No. 19 C 2590, 2021 U.S. Dist. LEXIS 175840, at *5–6 (N.D. Ill. Sept. 16, 2021) (concluding that plaintiff's claim that "he was wrongfully detained [pursuant to] the state court's commitment orders" was barred by *Rooker-Feldman* and emphasizing that plaintiff's "injury . . . is attributable to the state court orders finding him in need of inpatient mental health treatment"). Moreover, Plaintiff had an opportunity to seek such a determination in state court and in fact did so attempt. *See Ryan Thomas Hock v. Department of Health and Human Services (DHHS),* Case No. 2022CV000789 (Waukesha Cnty. Cir. Ct. 2022) (website link *supra* note 2).

Plaintiff's allegations further raise clear issues of plausibility.[4] And finally, Plaintiff's allegations—and his supplemental filing identifying the Jane and John Does—indicate that some or all of the defendants he seeks to sue are immune from suit. "[C]ourt-appointed psychological evaluators are 'protected by the same immunity extended to judges and other judicial

---

[4]"[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Many of Plaintiff's allegations rise to this level—for example, his claims that he was "tortured simply for having success in recovery," that he found a "slave pen lock" apparently placed by Defendant or some associated party in his residence, and his suspicion that his landlord "murdered the real house owner." ECF No. 27 at 1.

officers.'" *Gunderson v. Markos*, No. 17 CV 5139, 2018 U.S. Dist. LEXIS 235263, at *6 (N.D. Ill. Jan. 23, 2018) (quoting *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959)). *See also Duzynski v. Nosal,* 324 F. 2d 924, 928–29 (7th Cir. 1963) (affirming dismissal of case against two doctors who served on court-appointed commission to evaluate plaintiff's mental condition); *Schloss v. Reidda,* No. 10-C-3855, 2010 U.S. Dist. LEXIS 73854, at *4 (N.D. Ill. July 20, 2010) (psychologists hired by state to evaluate suitability of individuals for civil commitment are entitled to immunity).

### 4. CONCLUSION

Because the Court concludes that Plaintiff's claims are jurisdictionally barred under *Rooker-Feldman*, as well as deficient in other respects, and because Plaintiff has not appropriately prosecuted this action, the Court will dismiss the action without prejudice. *Jakupovic*, 850 F.3d at 904.

Accordingly,

**IT IS ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge